UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COURTNEY D. DURHAM,

        Plaintiff,

v.                                CASE NO. 3:22-cv-89-MMH-MCR

NEWREZ, LLC, a foreign limited
liability company; NEWREZ, LLC d/b/a
SHELLPOINT MORTGAGE SERVICING,
a Florida registered fictitious name entity
solely registered to do business in Duval
County; ROBERTSON, ANSCHUTZ,
SCHNEID, CRANE & PARTNERS,
PLLC, a Florida limited liability company;
and FEDERAL NATIONAL MORTGAGE
ASSOCIATION, a foreign company,

        Defendants.

_____/

## **REPORT AND RECOMMENDATION**[1]

    **THIS CAUSE** is before the Court on Defendants' Motion to Dismiss

Plaintiff's Second Amended Complaint (Doc. 50), Plaintiff's Response thereto

(Doc. 55), the Motion of Defendant Robertson, Anschutz, Schneid, Crane &

---

    [1] "Within 14 days after being served with a copy of [a report and recommendation on a dispositive motion], a party may serve and file specific written objections to the proposed findings and recommendations."   Fed.R.Civ.P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy."   *Id.*   A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.   *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

Partners, PLLC to Dismiss the Second Amended Complaint (Doc. 52), and

Plaintiff's Response thereto (Doc. 57).   For the reasons that follow, it is

**RECOMMENDED** that Defendants' Motions be **GRANTED in part** and

**DENIED without prejudice in part**.

## I.   Introduction

On January 25, 2022, Plaintiff, Courtney D. Durham ("Ms. Durham"),[2]

commenced this action by filing a seven-count, class-action Complaint against

Defendants, NewRez, LLC ("NewRez") and NewRez, LLC d/b/a Shellpoint

Mortgage Servicing ("Shellpoint"),[3] pursuant to Chapters 559 and 501 of the

Florida Statutes, 11 U.S.C. §§ 105(b) and 524(a)(2) and (j), and 15 U.S.C. §

1692.   (Doc. 1.)   On March 25, 2022, with opposing counsel's consent, Ms.

Durham filed her Amended Class Action Complaint ("Amended Complaint")

against the same Defendants.   (Doc. 16.)   On April 8, 2022, Defendants

moved to dismiss the Amended Complaint and to strike the class action

allegations (*see* Doc. 19), but their motion was denied as moot after Ms.

---

[2] Ms. Durham, an attorney, is proceeding *pro se*.   Although the pleadings of *pro se* litigants must be liberally construed and "are held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 448 U.S. 5, 9 (1980) (per curiam), Ms. Durham's pleadings need not be construed liberally because she is an attorney licensed to practice law in this state.

[3] According to Defendants, Newrez, LLC and Newrez, LLC d/b/a Shellpoint Mortgage Servicing "are the same company and constitute a single entity."   (Doc. 50 at 1.)

Durham, again with opposing counsel's consent, filed her 26-count Second Amended Complaint on June 22, 2022.   (*See* Doc. 35.)

The Second Amended Complaint added two new Defendants: Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("RAS") and Federal National Mortgage Association ("Fannie Mae"), and dropped all previous class-action allegations and alleged violations of the Fair Credit Reporting Act ("FCRA") and the Florida Consumer Collection Practices Act ("FCCPA"). (*Id.*)   The Second Amended Complaint alleges that Defendants violated a Chapter 7 bankruptcy discharge injunction and multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, during a state court foreclosure action filed against Ms. Durham.   (Doc. 35.)   The twenty-six (26) counts of the Second Amended Complaint are as follows:

1.   Contempt of bankruptcy order – 11 U.S.C. § 524(a) & (j) through 11 U.S.C. § 105 (against NewRez);
2.   Contempt of bankruptcy order – 11 U.S.C. § 524(a) & (j) through 11 U.S.C. § 105 (against Shellpoint);
3.   Contempt of bankruptcy order – 11 U.S.C. § 524(a) & (j) through 11 U.S.C. § 105 (against Fannie Mae);

4.   FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against NewRez);
5.   FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against Shellpoint);
6.   FDCPA violation – 15 U.S.C. § 1692e(8) (against NewRez);

7.    FDCPA violation – 15 U.S.C. § 1692e(8) (against Shellpoint);

8.    FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against NewRez);

9.    FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against Shellpoint);

10.   FDCPA violation – 15 U.S.C. § 1692e(2)(B) (against NewRez);

11.   FDCPA violation – 15 U.S.C. § 1692e(2)(B) (against Shellpoint);

12.   FDCPA violation – 15 U.S.C. § 1692e(10) (against NewRez);

13.   FDCPA violation – 15 U.S.C. § 1692e(10) (against Shellpoint);

14.   FDCPA violation – 15 U.S.C. § 1692e(10) (against NewRez);

15.   FDCPA violation – 15 U.S.C. § 1692e(10) (against Shellpoint);

16.   FDCPA violation – 15 U.S.C. § 1692f(1) (against NewRez);

17.   FDCPA violation – 15 U.S.C. § 1692f(1) (against Shellpoint);

18.   RESPA violation – 12 U.S.C. § 2605(b)(2)(A) (against NewRez);

19.   RESPA violation – 12 U.S.C. § 2605(b)(2)(A) (against Shellpoint);

20.   FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against RAS);

21.   FDCPA violation – 15 U.S.C. § 1692e(2)(A) (against RAS);

22.   FDCPA violation – 15 U.S.C. § 1692e(2)(B) (against RAS);

23.   FDCPA violation – 15 U.S.C. § 1692e(6)(A) (against RAS);

24.   FDCPA violation – 15 U.S.C. § 1692e(2)(B) (against RAS);

25.   RICO violation – 18 U.S.C. § 1961(1)(B) through § 1341 (against all Defendants);

26.   RICO violation – 18 U.S.C. § 1961(1)(B) through § 1343 (against all Defendants).

(Doc. 35.)

Counts 1 through 7 are grouped together as relating to "collection through credit bureau reporting."   (*Id.* at 22.)   In Counts 1 through 3, Ms. Durham alleges that NewRez/Shellpoint and Fannie Mae knew or should have known that her debt was discharged in bankruptcy, but continued to report the negative information to the credit reporting agencies ("CRA's") on a monthly basis in complete disregard of her rights and the bankruptcy court

order.   (*Id.* at 22-25.)   In Counts 4 and 5, in addition to the above stated
allegations, Ms. Durham alleges that NewRez/Shellpoint "made false and
misleading statements to the credit bureaus as to the character of the debt by
failing to disclose that same is disputed."   (*Id.* at ¶¶ 142, 147.)   In Counts 6
and 7, Ms. Durham alleges that NewRez/Shellpoint reported false
information to the credit bureaus, namely, that they "had a right to report
the debt for purposes of compelling payment by Ms. Durham," continued to
do so even after notification from Ms. Durham, and "made false and
misleading statements to the credit bureaus as to the status of the debt
without any disclosure that the debt was and is disputed."   (*Id.* at ¶¶ 149,
152, 153, 155, 158, 159.)

Counts 8 through 26 are grouped together as relating to "debt collection
in the foreclosure proceeding."   (*Id.* at 29.)   In Counts 8 and 9, Ms. Durham
alleges that NewRez/Shellpoint, "though no longer having any authority to
enforce the debt, falsely represented that the debt was owed to [them, rather
than to Select Portfolio Servicing, Inc. (SPS) and DLJ Mortgage Capital, Inc.
(DLJ)] by continuing to prosecute collection of the Note in the foreclosure
proceeding from summary judgment hearing through pending appeal."   (*Id.*
at ¶¶ 162-163, 166-167.)   In Counts 10 and 11, Ms. Durham alleges that
NewRez/Shellpoint, "though lacking any right to payment for services

rendered or compensation for payments made or expenses paid in relation to the terms of the Note, continued to prosecute collection of the Note in the foreclosure proceeding through pending appeal."   (*Id.* at ¶¶ 172, 177.)   In Counts 12 and 13, Plaintiff alleges that NewRez/Shellpoint lacked an independent right to enforce the Note, and NewRez/Shellpoint, Ditech Financial f/k/a Green Tree Servicing LLC, and Fannie Mae were never "both holders and owners of both the Note and Mortgage," but nevertheless continued to falsely state otherwise and to prosecute the foreclosure action. (*Id.* at ¶¶ 179-185, 187-193.)   In Counts 14 and 15, Ms. Durham adds that NewRez/Shellpoint "knew or should have known that the sale and transfer of its alleged interest to another entity stopped its right to continue prosecution of the foreclosure proceeding yet it continued to do so after" and "failed to provide any evidence in contradiction of their express representations [in] correspondence to Ms. Durham and January 17, 2022 [state court] Motion to Substitute that the Note is now enforceable by SPS and DLJ."   (*Id.* at ¶¶ 195, 202, 204, 211.)   In Counts 16 and 17, Ms. Durham alleges, in part, that NewRez/Shellpoint "falsely swore through its representative in the Affidavit of Indebtedness that amounts were due" and "unconscionably had been and is still seeking to collect amounts due without a legal right."   (*Id.* at ¶¶ 214, 218, 223, 227.)   In Counts 18 and 19, Ms. Durham alleges that

NewRez/Shellpoint failed to give her the statutorily required 15-day notice of
change of servicer as to SPS and moved for summary judgment in the
foreclosure action prior to providing the notice "in order to have a final
judgment of foreclosure entered enabling it to receive monies by sale of Ms.
Durham's residence."   (*Id.* at ¶¶ 231-232, 235-236.)

       In Counts 20 and 21, Ms. Durham alleges that RAS knew or should
have known that the inception and continued prosecution of the foreclosure
action on behalf of NewRez/Shellpoint and Fannie Mae falsely represented
the character of the debt and the entity to whom the debt was owed.   (*Id.* at
¶¶ 239, 246.)   In Count 22, Ms. Durham alleges that RAS sought
compensation for legal services and other expenses on behalf of Defendants in
the foreclosure proceeding with knowledge that collection of the debt was not
a legal right of Defendants or itself.   (*Id.* at ¶ 251.)   In Count 23, Ms.
Durham alleges that RAS falsely represented that NewRez/Shellpoint had
the right to collect on the debt based on a power of attorney from Ditech and
that Ditech had authority to enforce the debt pursuant to the Note; also, RAS
knew that there was no power of attorney or servicer agreement between
NewRez and Ditech to support authority to enforce the Note.   (*Id.* at ¶¶ 254,
258.)   In Count 24 (similar to Count 22), Plaintiff alleges that RAS sought
compensation for legal services and other expenses on behalf of Defendants

7

and Ditech in the foreclosure proceeding, with knowledge that collection of the debt was not a legal right of Defendants, Ditech, or RAS.    (*Id.* at ¶ 261.)

In Counts 25 and 26, Ms. Durham alleges that using the instrumentalities of the U.S. mail and electronic wire, "Defendants made false representations in court filings, credit bureau reports, and correspondence with the intent to obtain money and residence from Ms. Durham," thereby demonstrating "a pattern of racketeering activity through the [initiation and ongoing] prosecution of the foreclosure proceedings without a legal right, making false representations in its [sic] documents filed in the foreclosure proceeding[,] [to Ms. Durham], [in] reports to the credit bureaus, and harassing Ms. Durham repeatedly through its [sic] communications at the time of transfer to NewRez and Shellpoint."    (*Id.* at ¶¶ 264, 268-269, 274, 279-280.)

The Second Amended Complaint seeks actual, statutory, punitive, and treble damages, attorney's fees, and costs against all Defendants; an order enjoining NewRez/Shellpoint, Fannie Mae, and any future servicers "from any and all further reporting of the debt to the credit reporting bureaus or any other entity"; an order enjoining Defendants and any future servicers or attorneys on their behalf "from continuing their illegal collection practices, including enforcement or prosecution of the foreclosure proceeding in Citrus

County, Florida Case No. 09:2019CA499 whether as to the appeal or original action"; an order prohibiting NewRez/Shellpoint, Fannie Mae, and any successors or assigns "from any further efforts to collect any property, including Ms. Durham's residence"; an order that Defendants "divest themselves of any interest in the Note and Mortgage underlying Ms. Durham's residence"; and an order taking "judicial notice of case no. 3:08-bk-7014." (*Id.* at 50-51.)

In August 2022, Defendants filed their respective Motions, seeking dismissal of the Second Amended Complaint, with prejudice, pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure. (Docs. 50, 52.) After Plaintiff responded to the Motions, the Motions were referred to the undersigned on October 13, 2022 for a report and recommendation regarding an appropriate resolution. (*See* Docs. 55, 57, 62.)

In their Motions, Defendants argue that this action should either be stayed or dismissed based on *res judicata*, collateral estoppel, the *Colorado River* abstention doctrine, the *Rooker-Feldman* doctrine, lack of jurisdiction, and/or failure to state a claim. (*See* Docs. 50, 52.) Ms. Durham responds that the doctrines of *res judicata*, collateral estoppel, *Colorado River* abstention, and *Rooker-Feldman* are inapplicable to this case, and that the Second Amended Complaint states a claim for relief. (Docs. 55, 57.) The

undersigned finds that this action should be stayed based on the *Colorado River* abstention doctrine pending resolution of Ms. Durham's state court appeals.

## II.   Relevant Factual Background[4]

### A.   Judicial Notice

As an initial matter, Defendants ask that the Court take judicial notice of the docket sheet and all filings in the foreclosure action and in the state court appeals.   (*See* Docs. 50, 52.)   Ms. Durham objects to the Court taking "judicial notice of the state appellate proceedings as Plaintiff is not requesting that the Court review the state court judgment or the appeal that have been entrusted to the Fifth District Court of Appeal," but requests in her Second Amended Complaint that the Court take judicial notice of the filings in the bankruptcy action.   (Doc. 35; Doc. 57 at 2.)

Ms. Durham's objection is not well taken.   Some of the state court documents are attached to the Second Amended Complaint and are, therefore, incorporated into her pleading.   To the extent "the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."   *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (per

---

[4] This factual background is based on the allegations in the Second Amended Complaint, the attachments thereto, the attachments to Defendants' present Motions, and the state court dockets.

curiam); *see also Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) ("If the exhibits incorporated by reference contradict the general and conclusory allegations of the pleading, the exhibits govern.").

The rest of the state court documents that are not incorporated into the Second Amended Complaint "are public records not capable of reasonable dispute, and appropriate for judicial notice." *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, No. 3:10-cv-423-J-34TEM, 2011 WL 4529604, *2 (M.D. Fla. Sept. 30, 2011).   Therefore, these documents may be considered in ruling on Defendants' Motions without converting them into motions for summary judgment.   *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (per curiam) (finding that "[t]he district court properly took judicial notice of the documents in Horne's first case, which were public records that were 'not subject to reasonable dispute' because they were 'capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned,'" without converting the motion to dismiss into a motion for summary judgment); *Helman v. Udren Law Offices, P.C.*, No. 0:14-CV-60808, 2015 WL 1565335, *1 n.1 (S.D. Fla. Apr. 8, 2015) (taking judicial notice of plaintiff's prior suit in the Southern District of Florida for background information purposes); *Beepot*, 2011 WL 4529604, at *5 n.7

(finding that because the public records reflecting the state court foreclosure proceeding were both central to plaintiffs' claims and their authenticity was not challenged, the motions to dismiss did not need to be converted to motions for summary judgment; moreover, the documents were public records that were central to plaintiffs' claims and were not subject to a reasonable dispute).

### B.    The Mortgage

On August 23, 2007, Ms. Durham executed a promissory note securing payment to Compass Bank in the amount of $109,000.00 (the "Note").   (Doc. 35 at ¶ 19; Doc. 35-3 at 2, 6, 10.)   The same day, Plaintiff also executed a mortgage (the "Mortgage," together with the "Note," the "Loan") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as designated nominee for the lender Compass Bank, which secured a first lien on Plaintiff's single-family residence located at 924 Russell Avenue, Inverness, Florida 34453 (the "Property").   (Doc. 35 at ¶¶ 19-20; Doc. 35-3 at 2, 20; Doc. 35-4 at 10.)

On June 17, 2015, MERS assigned and transferred the Mortgage to Ditech Financial f/k/a Green Tree Servicing LLC, its successors and assigns, who then assigned the Mortgage to NewRez d/b/a Shellpoint.   (Doc. 35-4 at 4; Doc. 35-5 at 5.)   On August 31, 2015, DiTech Mortgage Corp, DT Holdings

12

LLC, and Green Tree Servicing LLC all merged under "Green Tree Servicing LLC," and the name of the surviving limited liability company was amended to "Ditech Financial LLC."   (Doc. 35-4 at 7-8.)

On October 20, 2017, Ms. Durham and DiTech Financial LLC, as lender/servicer, entered into a Modification Agreement, amending and supplementing both the Note and the Mortgage.   (Doc. 35-3 at 14.)   On October 6, 2018, DiTech Financial LLC sent a notice to Ms. Durham, informing her that she was behind on her mortgage payment.   (Doc. 35-11 at 28.)   On November 30, 2018, DiTech Financial LLC, on behalf of Fannie Mae, sent a notice of default and a demand letter to Ms. Durham.   (Doc. 35-11 at 14, 21-25.)   According to an Affidavit of Lost Note, dated May 3, 2019 and attached to the complaint for foreclosure, the Mortgage was assigned to Green Tree Servicing LLC.   (Doc. 35-3 at 8.)

### C.   The Bankruptcy Action

On November 10, 2008, Ms. Durham filed a voluntary petition under Chapter 7 of the Bankruptcy Code (Case No. 3:08-bk-7014-PMG), where the debt secured by her principal residence was listed as to creditor Countrywide Home Loans and was claimed as exempt.   (Doc. 35 at ¶¶ 21-22; *see also* Doc. 50-1; Doc. 50-2.)   In the Individual Debtor's Statement of Intention, Ms. Durham indicated that she would "retain [the] collateral and continue to

make regular payments" for her real property.   (Doc. 50-2 at 32.)

On March 3, 2009, Plaintiff received a discharge under 11 U.S.C. § 727. (Doc. 35 at ¶ 23; Doc. 35-2; Doc. 50-1.)   According to the Second Amended Complaint, "[t]he debt related to Ms. Durham's residential real property was not reaffirmed during the course of the 2008-2009 bankruptcy."   (Doc. 35 at ¶ 24.)

### D.   The Foreclosure Action[5]

On June 10, 2019, DiTech Financial LLC f/k/a Green Tree Servicing LLC, represented by RAS, filed a foreclosure complaint against Ms. Durham, her "unknown spouse," and Suncoast Credit Union f/k/a Suncoast Schools Federal Credit Union, in the Circuit Court of the Fifth Judicial Circuit in and for Citrus County, Florida, under Case No. 2019-CA-499-A (the "foreclosure action").   (Doc. 35 at ¶¶ 25-26; Doc. 35-3; Doc. 50-3 (representing the docket sheet in the foreclosure action).)

On November 23, 2019, Ms. Durham filed a motion to dismiss, stating that as of November 1, 2019, DiTech Financial LLC f/k/a Green Tree Servicing LLC was no longer the servicer of the Mortgage, and that the new servicer (Shellpoint) had been in contact with her for collection and

---

[5] Only the most relevant events from the foreclosure action are recited herein.

enforcement of the terms of the Mortgage and the Note.[6]   (Doc. 35-6 at 2.)

Ms. Durham also filed a Notice of Servicing Transfer, dated October 17, 2019,

stating that Shellpoint would collect any voluntary payments made on or

after November 1, 2019.   (*Id.* at 3.)   On December 31, 2019, DiTech

Financial LLC f/k/a Green Tree Servicing LLC filed a response to Ms.

Durham's motion to dismiss, stating that it was in the process of moving to

substitute the plaintiff, that Ms. Durham's argument was outside the four

corners of the complaint, and that any lack of standing argument was more

appropriately raised as an affirmative defense.   (Doc. 35-7 at 2-4.)

On January 2, 2020, DiTech Financial LLC f/k/a Green Tree Servicing

LLC moved to substitute NewRez d/b/a Shellpoint as plaintiff based on an

Assignment of Mortgage dated December 21, 2019.   (Doc. 35-8; *see also* Doc.

35 at ¶¶ 31, 40, 41, & 44 (alleging that in December 2019, NewRez began

servicing Plaintiff's loan).)   Ms. Durham objected to the requested

substitution.   (*See* Doc. 50-3 at 2.)   On May 21, 2020, the state court entered

an order substituting NewRez LLC d/b/a Shellpoint Mortgage Servicing as a

---

[6] On November 23, 2019, Ms. Durham apparently filed another motion to dismiss, making the same arguments.   (*See* Doc. 35-10 at 2.)   On December 3, 2020, NewRez filed a response, reiterating its previous arguments and stating that the substitution of plaintiff rendered both motions to dismiss moot, and since NewRez was acting under a power of attorney between DiTech and NewRez, "Plaintiff could have continued the action in the name of Ditech acting under the power of attorney."   (*Id.*)

15

party plaintiff in place of DiTech.   (Doc. 35 at ¶¶ 26, 46-47.)   On December

6, 2020, Ms. Durham filed her second amended answer and affirmative

defenses, denying plaintiff's right to enforce the Note.[7]   (Doc. 35-19 at 2; Doc.

50-3 at 3.)

On December 6, 2021, NewRez filed a motion for summary judgment as

to all counts.   (Doc. 35 at ¶¶ 52-53; Doc. 35-11.)   The same day, RAS, on

behalf of Ditech Financial LLC f/k/a Green Tree Servicing LLC, filed an

Affidavit of Ownership of Original Promissory Note, which confirmed that

Fannie Mae was the investor of the Loan (i.e., the owner of the Note and

Mortgage), and NewRez LLC d/b/a Shellpoint Mortgage Servicing was the

servicer.   (Doc. 35 at ¶ 54; Doc. 35-5 at 2-6.)   According to the Affidavit of

Ownership of Original Promissory Note, Fannie Mae was "the only entity

known who [was] entitled to enforce the subject promissory note."   (Doc. 35-5

at 5.)

On December 13, 2021, Shellpoint sent a letter to Ms. Durham (which

was allegedly received on December 21, 2021) stating that the Note had been

sold on November 19, 2021 to DLJ Mortgage Capital, Inc., but Shellpoint

---

[7] On November 13, 2020, on plaintiff's motion, the state court entered an order striking Ms. Durham's affirmative defenses Nos. 2 and 6.   (Doc. 35-11 at 6.) Ms. Durham's affirmative defenses Nos. 1 (failure to comply with HUD regulations), 3 (failure to mitigate damages), 4 (breach of duty of good faith and fair dealing in violation of RESPA), and 5 (violation of RESPA) were later addressed in plaintiff's motion for summary judgment.   (Doc. 35-11.)

would continue to act as the servicer of the Loan.   (Doc. 35 at ¶ 62; Doc. 35-12 at 2; Doc. 35-13 at 4.)   On December 15, 2021, Shellpoint sent another letter to Ms. Durham (which was allegedly received on January 5, 2022) that the servicing of her mortgage was being transferred to Select Portfolio Servicing, Inc. ("SPS"), effective December 20, 2021.   (Doc. 35-14; *see also* Doc. 35 at ¶¶ 61, 66.)

On December 24, 2021, Ms. Durham filed a motion to strike plaintiff's motion for summary judgment, arguing that the motion was filed "in bad faith and without any authority," because, as of November 19, 2021, plaintiff no longer served as the servicer of the Mortgage.   (Doc. 35-13 at 2.)   On January 16, 2022, Ms. Durham filed an amended motion to strike plaintiff's motion for summary judgment, arguing that plaintiff had not identified the owner of the Note.   (Doc. 35-15 at 3-4.)

On January 17, 2022, NewRez/Shellpoint, through RAS, filed a motion to substitute DLJ Mortgage Capital, Inc. as plaintiff, pursuant to an Assignment of Mortgage dated January 11, 2022.   (Doc. 35 at ¶¶ 68, 74; Doc. 35-16.)   On February 5, 2022, Ms. Durham filed an Objection to the motion to substitute, arguing that only the Mortgage was transferred from NewRez to DLJ, but not the authority to enforce the Note, and, in any event, NewRez was not the owner of the Note.   (Doc. 35-19 at 3, 5.)

On February 15, 2022, the state court entered an order granting summary judgment in favor of NewRez.   (Doc. 35 at ¶¶ 35, 78-79, 82; Doc. 35-20.)   The order stated:

> The plaintiff filed affidavits establishing each of the elements necessary to establish its entitlement to enforce the note and mortgage, the events of default thereunder, and the amounts due from the defendant.   The defendant has not provided the court with any information, in the form or time frame required under Rule 1.500, Fla.R.Civ.P., to create a genuine factual dispute, nor has the defendant cited to any portion of the record which would be the basis for a genuine factual dispute.

(Doc. 35-20 at 2.)   On February 15, 2022, a Final Judgment of Foreclosure was entered in favor of plaintiff and against Ms. Durham.   (*Id.* at 4-8.)

Ms. Durham filed several post-judgment motions to vacate the order granting summary judgment and the Final Judgment of Foreclosure, and for a rehearing, but the motions were denied on April 21, 2022.[8]   (Doc. 35 at ¶

---

[8] Ms. Durham argued, *inter alia*, that the order granting summary judgment, entered pursuant to Fla.R.Civ.P. 1.500, "was void due to Ms. Durham's timely filed and not stricken Second Amended Answer and Affirmative Defenses."   (Doc. 35 at ¶¶ 82-83.)   However, the state court's order of April 21, 2022, which denied Ms. Durham's motion for a rehearing, corrected a scrivener's error, namely, that "the Order Granting Summary Judgment listed Fla. R. Civ. P. 1.500 as applied to Defendant, but should have referenced Fla. R. Civ. P. 1.510."   (Doc. 35-21 at 52.) Rule 1.500, Fla. R. Civ. P., deals with defaults and final judgments thereon; whereas Rule 1.510, Fla. R. Civ. P., deals with summary judgment.   Ms. Durham incorrectly claims that "[t]he state court entered summary judgment *based on a default under Rule 1.500* with no stated findings of fact."   (Doc. 55 at 5 (emphasis added).)   The state court entered summary judgment against Ms. Durham, but not based on a default.   Interestingly, despite appealing the state court order on summary judgment, Ms. Durham now argues that the "amended order granting summary judgment" is "non-final[] [and] non-appealable."   (*Id.*)

80; Doc. 35-21; Doc. 50-3 at 4-5.)   On June 30, 2022, the Clerk of Court held a foreclosure sale and DLJ Mortgage Capital, Inc. was the highest bidder. (Doc. 35 at ¶ 80; *see also* Doc. 35-21 at 54; Doc. 50-3 at 6.)

### E.   State Court Appeals

On May 19, 2022, Plaintiff filed notices appealing the state court orders to the Florida Fifth District Court of Appeal: Case No. 5D22-1210 (voluntarily dismissed on May 24, 2022); Case No. 5D22-1212 (pending; the last entry was a notice of panel assignment filed on January 23, 2023); and Case No. 5D22-1216 (dismissed on November 2, 2022).   (Doc. 50-3 at 5; Doc. 50-4; Doc. 52-1; Doc. 35 at ¶¶ 85-86.)   In seeking to vacate the Final Judgment of Foreclosure, Ms. Durham argued that the state court orders were "void for being entered pursuant to Fla. R. Civ. P. 1.500 without notice to Ms. Durham," that NewRez lacked standing to foreclose the Mortgage, and that it was not entitled to enforce a lost Note.   (Doc. 35 at ¶¶ 85-86.)

### III.   Discussion

The undersigned agrees with Defendants that this action should be stayed pending the resolution of Ms. Durham's state court appeals pursuant to the *Colorado River* abstention doctrine in order to conserve judicial resources and to allow for a comprehensive – rather than piecemeal – disposition of the dispute between the parties.   (Doc. 50 at 13; Doc. 52 at 4.)

19

"Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."   *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal quotation omitted and alteration adopted).   The "obligation of the federal courts to exercise the jurisdiction given them" is "virtually unflagging."   *Id.* As such, "federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances."   *Ambrosia Coal & Constr. Co. v. Pagés Morale*s, 368 F.3d 1320, 1328 (11th Cir. 2004) (quoting *Colo. River*, 424 U.S. at 818).   "The principles of [the *Colorado River*] doctrine rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."   *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997 (11th Cir. 2004) (per curiam) (internal quotation omitted and alteration adopted).

"*Colorado River* abstention applies only 'when federal and state proceedings involve substantially the same parties and substantially the same issues.'"   *Willson v. Bank of Am., N.A.*, 684 F. App'x 897, 900 (11th Cir. 2017) (per curiam).

> If this threshold condition is met, then eight factors are weighed to analyze the permissibility of abstention:
> (1) whether one of the courts has assumed jurisdiction over property,

(2) the inconvenience of the federal forum,
(3) the potential for piecemeal litigation,
(4) the order in which the fora obtained jurisdiction,
(5) whether state or federal law will be applied, []
(6) the adequacy of the state court to protect the parties' rights . . . ,
[(7) the vexatious or reactive nature of either the federal or the state litigation . . . [, and]
[(8) whether the concurrent cases involve a federal statute that evinces a policy favoring abstention.

*Id.* "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Id.*

Here, the threshold condition – involvement of "substantially the same parties and substantially the same issues" – has been satisfied. The parties in both actions are substantially the same, because Ms. Durham, Plaintiff here, was a defendant in the foreclosure action[9]; NewRez LLC d/b/a

---

[9] There were two additional defendants in the foreclosure action, Ms. Durham's "unknown spouse" and Suncoast Credit Union f/k/a Suncoast Schools Federal Credit Union.   It seems that these additional defendants were dropped from the foreclosure action and the Final Judgment of Foreclosure was entered solely against Ms. Durham.

Shellpoint Mortgage Servicing, a named Defendant in this action, was substituted as plaintiff in the foreclosure action on May 21, 2020 and a summary judgment was entered in its favor on February 15, 2022; Fannie Mae, a named Defendant in this action, was noted in the Affidavit of Ownership of Original Promissory Note to be the investor of the Loan and "the only entity known who [was] entitled to enforce the subject promissory note" in the foreclosure action; and although RAS, a named Defendant in this action, was not a party in the foreclosure action, it represented plaintiffs in that action.

The issues in both actions are also substantially the same.   A federal case involves "substantially the same issues" when the "federal claims will require a determination of whether the Florida court's foreclosure judgment was correct."   *Willson*, 684 F. App'x at 900.   While the connection of Counts 1 through 7 to the foreclosure proceeding seems more attenuated, Counts 8 through 26, in Ms. Durham's own words, all relate to "debt collection in the foreclosure proceeding."   (Doc. 35 at 29.)   Ms. Durham essentially alleges that Defendants had no authority to enforce the debt for her house, but they nevertheless continued to prosecute the foreclosure proceeding, making false representations in state court filings, in correspondence, and to the credit

bureaus.[10]   Although Ms. Durham did not necessarily raise all of these claims as affirmative defenses in the foreclosure action, she could have done so, and she did raise the arguments about Defendants' lack of authority to prosecute the foreclosure action in her various motions and responses filed in the state court.   (*See* Docs. 35-6, 35-10, 35-13, 35-15, 35-17, 35-19, 35-21.) Because the allegations in the Second Amended Complaint essentially evolve from arguments that were made, or could have been made, in the foreclosure action, a determination of Ms. Durham's federal claims is necessarily intertwined with a determination of whether the Final Judgment of Foreclosure could stand.   Thus, the issues in the state and the federal action are substantially the same.   *See Demeritte v. Novastar Mortg., Inc.*, No. 14–62281–Civ., 2014 WL 5529616, *2 (S.D. Fla. Oct. 30, 2014) (finding that plaintiff's claims were "inextricably intertwined" with a state court judgment

---

[10] Notably, Ms. Durham's Response to RAS's instant Motion states, in relevant part: "In seeking collection of the debt, Defendant RAS violated federal laws through the use of false and deceptive misrepresentations as to the right of enforcement of the Note by Defendants, NewRez, Shellpoint, and [Fannie Mae], in order to obtain a judgment on the real property for which Plaintiff seeks damages. *Defendants knew that, without these misrepresentations, foreclosure through reestablishment of the lost Note would not have been possible.*"   (Doc. 57 at 17 (emphasis added).)   Further, Ms. Durham points out that her Second Amended Complaint alleges that "both she and the [state] court relied on the false representations of Defendant[s] included in the documents that led to the [alleged] harm."   (*Id.* at 18-19 (citations omitted).)   If the state court relied on Defendants' misrepresentations and if the foreclosure would not have happened without them, as Ms. Durham suggests, it is appropriate for those issues to be resolved by the state court.

where plaintiff alleged that defendants, who previously commenced the underlying foreclosure proceeding in state court, could not demonstrate they owned the promissory note and mortgage on the subject property or otherwise establish standing to maintain the foreclosure; that plaintiff was "seeking the resolution of an issue—namely standing—that the state court [would] necessarily address and resolve in the underlying foreclosure proceeding"; and that even if a foreclosure judgment had not been issued, abstention was proper under the *Colorado River* doctrine where there was a parallel lawsuit in one or more state courts); *McLean v. JP Morgan Chase Bank, N.A.*, 79 So.3d 170, 173 (Fla. Dist. Ct. App. 2012) ("A crucial element in any mortgage foreclosure proceeding is that the party seeking to foreclose must demonstrate that it has standing to foreclose."); *cf. Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 133 (11th Cir. 2005) (finding that a mortgagor's federal statutory claims, including TILA and FDCPA claims, were barred under the *Rooker-Feldman* abstention doctrine, because they were inextricably intertwined with an earlier foreclosure proceeding in state court and the mortgagor could have raised these claims in the state court).

As such, the Court will now analyze the eight factors identified in *Willson*.  The first factor weighs heavily in favor of abstention because the state court had already assumed jurisdiction over Ms. Durham's real

property when this action was commenced.   *See Colo. River*, 424 U.S. at 818

("It has been held . . . that the court first assuming jurisdiction over property

may exercise that jurisdiction to the exclusion of other courts."); *Willson*, 684

F. App's at 901 ("The first factor favors abstention because the Florida court

already had jurisdiction over Willson's property and the federal court

necessarily would decide whether the foreclosure judgment was correct.").

The second factor—the inconvenience of the federal forum—is neutral.

"When the federal and state courts are located in the same geographical area,

courts routinely deem this factor to be neutral."   *Beepot*, 2011 WL 4529604,

at *9.   The Circuit Court of the Fifth Judicial Circuit in and for Citrus

County, Florida, the Florida Fifth District Court of Appeal, and this Court

are all located in the same geographical region of Florida within a two-to-

three-hour driving distance from each other.

The third factor—the potential for piecemeal litigation—weighs

significantly in favor of abstention in light of the ongoing appellate

proceedings.   As Defendants put it, there is no good reason to have the same

facts reviewed on a piecemeal basis by this Court and the state court.

Abstention "will reduce the cost of litigation, reduce duplicative proceedings,

promote judicial economy, and avoid inconsistent results."   *Id.*

The fourth factor—the order in which the respective courts obtained

jurisdiction— also weighs in favor of abstention because the state court assumed jurisdiction over the real property in 2019, or over two years before the federal action was commenced.   Also, the appellate challenges in the state court have progressed much further than the present action.   *See Moses H. Cone*, 460 U.S. at 21-22 (stating that "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions"); *Willson*, 684 F. App'x at 901 ("The fourth factor also favors abstention because the district court properly looked to the relative progress of the two suits and found the Florida court had progressed beyond trial.").

The fifth factor—whether state or federal law will be applied—does not compel a different result.   Although the Second Amended Complaint here raises a number of federal law claims, "Florida state courts routinely entertain federal statutory TILA, RESPA and FDCPA claims, and common law claims, as counterclaims or affirmative defenses in state foreclosure actions."   *Beepot*, 2011 WL 4529604, at *9.   For the same reason, the sixth factor also does not compel a different result as the state court could adequately protect the parties' rights.

The seventh factor is the vexatious or reactive nature of either the federal or the state litigation and it favors abstention here.   The "vexatious

26

or reactive nature" of the federal action is apparent from both the timing and the substance of the allegations, which Defendants characterize as a thinly veiled effort by Ms. Durham to find a judge more sympathetic to her plight. Notably, as relief in this action, Ms. Durham seeks, *inter alia*, an order enjoining Defendants and future servicers or attorneys on their behalf "from continuing their illegal collection practices, including enforcement or prosecution of the foreclosure proceeding in Citrus County, Florida Case No. 09:2019CA499 whether as to the appeal or original action," an order prohibiting NewRez/Shellpoint, Fannie Mae, and any successors or assigns "from any further efforts to collect any property, including Ms. Durham's residence," and an order that Defendants "divest themselves of any interest in the Note and Mortgage underlying Ms. Durham's residence."   (Doc. 35 at 50-51.)   Thus, this action is an apparent attempt to undo the Final Judgment of Foreclosure entered in state court.   As stated in *Beepot*, while this Court is sympathetic to the plight of so many homeowners, including Ms. Durham, her attempted "reactive use of the federal court is inappropriate, and weighs in favor of abstention."   2011 WL 4529604, at *10.

The eighth and final factor, whether the concurrent cases involve a federal statute that evinces a policy favoring abstention, is neutral here.   No federal statute evinces such a policy either favoring or opposing abstention in

this case.   On balance, therefore, the factors weigh in favor of abstention until resolution of Ms. Durham's state court appeals under the *Colorado River* abstention doctrine.

Although Defendants claim that abstention is also appropriate under the *Rooker-Feldman* doctrine,[11] the undersigned disagrees.   The *Rooker-Feldman* abstention doctrine "places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation."   *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001).   It is well-settled that "federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts."   *Siegel v. LePore*, 234 F.3d 1163, 1172 (11th Cir. 2000); *Harper*, 138 F. App'x at 132 (stating that under the *Rooker-Feldman* abstention doctrine, "a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision").

However, the scope of the *Rooker-Feldman* doctrine is "narrow" and it only applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments *rendered before the district court proceedings commenced* and inviting district court review and rejection of those

---

[11] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) & *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983).

28

judgments." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1072 (11th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis added); *Nicholson v. Shafe*, 558 F.3d 1266, 1274 (11th Cir. 2009) (same).   Importantly, the *Rooker-Feldman* doctrine applies only when the state court proceedings end before the federal action commences.   *See Lozman*, 713 F.3d at 1072; *Nicholson*, 558 F.3d at 1274-75.

Here, the federal action was commenced on January 25, 2022, or before the conclusion of the state court proceedings;[12] as such, the *Rooker-Feldman* doctrine is inapplicable.   *See Lozman*, 713 F.3d at 1074 (finding that because the state court proceedings did not end prior to the commencement of the federal action, *Rooker-Feldman* did not divest the federal court of jurisdiction, regardless of whether the claims raised in state court were identical to those raised in federal court); *see also Gonzalez v. Fed. Nat'l Mortg. Ass'n*, 860 F.

---

[12] "[S]tate court proceedings end for *Rooker-Feldman* purposes in three scenarios: '(1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, (2) if the state action has reached a point where neither party seeks further action, and (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated.'" *Lozman*, 713 F.3d at 1072 (quoting *Nicholson*, 558 F.3d at 1275) (internal quotation marks omitted).   "[A] state proceeding has not ended when a state court loser seeks 'further action,' such as an appeal."   *Nicholson*, 558 F.3d at 1275, 1280 (holding that "state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from a state court judgment remains pending in state court at the time that the state court loser commences the federal court action").

App'x 693, 694 (11th Cir. 2021) (per curiam) (stating that "*Rooker-Feldman* is inapplicable when – as in this case – a federal civil action is filed before the related state-court proceedings have ended").[13]

Because abstention is appropriate under the *Colorado River* abstention doctrine, the undersigned does not reach Defendants' remaining arguments as to the merits of the underlying claims, or the sufficiency of Ms. Durham's pleading.   *Beepot*, 2011 WL 4529604, at *11 ("'If a court states that abstention is appropriate in a case, it should not then adjudicate the case on its merits,' by considering a motion to dismiss brought pursuant to Rule 12(b)(6), or a motion for summary judgment under Rule 56.") (citing, *inter alia*, *Stone v. Wall*, 135 F.3d 1438, 1441 n.3 (11th Cir. 1998)).

## IV.   Recommendation

Based on the foregoing, the undersigned respectfully **RECOMMENDS**:

1.      Defendants' Motions (**Docs. 50 & 52**) be **GRANTED** only to the

---

[13] Although it is not necessary for the Court to separately address claim or issue preclusion in light of the recommendations made herein, it does not appear that Defendants have properly presented their arguments on either claim or issue preclusion, particularly since it is Florida law that governs, rather than federal law as cited by Defendants (*see* Doc. 50; *but see* Doc. 52).   *See Lozman*, 713 F.3d at 1074 n.6 (stating that "the district court erred in applying federal, instead of Florida, *res judicata* law").   As the Eleventh Circuit instructs, "[i]n considering whether to give preclusive effect to state-court judgments under *res judicata* or collateral estoppel, the federal court applies the rendering state's law of preclusion."   *Lozman*, 713 F.3d at 1074 n.6; *see also Gonzalez*, 860 F. App'x at 694 ("In determining whether a state-court judgment bars later federal litigation, we apply the principles of *res judicata* (or claim preclusion) of the law of the pertinent state.").

extent that this action be **STAYED** pursuant to the *Colorado River*
abstention doctrine pending resolution of Ms. Durham's state court appeals,
and **DENIED without prejudice** in all other respects.

2.    The parties be directed to file a joint status report to advise this
Court of the status of the state court proceedings within **ninety (90) days** of
the Court's Order on this Report and Recommendation, and **every ninety
(90) days** thereafter.

3.    The Clerk of Court be directed to terminate all pending motions
and administratively close the file pending further order of this Court.

**DONE AND ENTERED** at Jacksonville Florida, on January 29, 2023.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

Counsel of Record

*Pro Se* Party